84 S.E.2d 167 (1954)
240 N.C. 689
William A. H. HOWLAND
v.
Amber Justiz STITZER, now remarried and known as Mrs. Sherman Hawes, Jr.; and First National Bank and Trust Company in Asheville, North Carolina, a Corporation.
No. 100.
Supreme Court of North Carolina.
October 13, 1954.
*168 William J. Cocke, and C. N. Malone, Asheville, Charles Rothenberg, New York City, of counsel, for plaintiff.
David H. Armstrong, Troy, for defendant-appellant.
DENNY, Justice.
Certain phases of the litigation involved in this appeal have been before us on two former appeals. The first action was instituted on 5th December, 1949, and the appeal therein was heard at the Spring Term 1950, and the opinion of this Court, dismissing the action, is reported in 231 N.C. 528, 58 S.E.2d 104.
The present action was instituted on 24th January, 1952 and was heard at the Fall Term 1952 on an appeal from the denial of a motion to strike certain allegations in the plaintiff's reply. The opinion disposing of that appeal is reported in 236 N.C. 230, *169 72 S.E.2d 583. The plaintiff thereafter filed a petition to rehear, which was denied. He then petitioned the Supreme Court of the United States for a writ of certiorari to review the opinion of this Court, which was denied. Howland v. Stitzer, 345 U.S. 935, 73 S.Ct. 796, 97 L.Ed. 1362. Many of the facts involved in the present appeal are stated in detail in the former appeals and will not be restated except in so far as may be necessary to an understanding of the questions presented for determination.
The plaintiff and the defendant, Mrs. Sherman Hawes, Jr., were formerly husband and wife, having been married on 6th January, 1941. Thereafter, on 18th September, 1946 the plaintiff and his wife, Amber Howland (the present Mrs. Hawes), entered into a separation agreement, the terms of which were to remain in force during the life of Mrs. Howland, or until her remarriage. The plaintiff found the terms of this agreement unduly burdensome to him. Therefore, he proposed a new separation agreement by the terms of which, in lieu of the benefits provided in the then existing agreement in favor of his estranged wife, he agreed to give her for life, irrespective of her future marital status, the income from certain stock which is held in trust under a trust indenture by the First National Bank and Trust Company in Asheville, North Carolina. His estranged wife, the present Mrs. Hawes, consented and entered into the new agreement which was executed on 2nd April, 1947. The essential parts of this agreement in respect to the income from the stock are set out in the opinion disposing of the former appeal in this action.
Mrs. Howland instituted an action for divorce in the Supreme Court of New York, County of New York, on 13th February, 1947. She was given an interlocutory decree for absolute divorce from William Anthony Hoppin Howland, the plaintiff in the present action, which divorce became absolute on 15th October, 1947. The decree of the New York Court contained the following provision: "That the defendant (the plaintiff herein) shall provide for the support and maintenance of the plaintiff during the entire period of her lifetime in accordance with the terms of an agreement between the parties dated the 2nd day of April, 1947, which said agreement is incorporated in this judgment."
The plaintiff in this action remarried immediately after the effective date of the above decree. Mrs. Amber Howland later married Charles Stitzer, Jr. This marriage resulted in a divorce and the former Mrs. Amber Howland thereafter married Sherman Hawes, Jr.
The proceeds from the stock referred to in the separation agreement dated 2nd April, 1947, were paid to the former Mrs. Amber Howland from 1st May, 1947 until 5th December 1949, the date on which the first action referred to herein was instituted.
In June, 1950 the plaintiff filed a motion in the Supreme Court of New York, County of New York, requesting the New York Court to modify the decree entered in the original divorce action to the extent it required the plaintiff to support his former wife, on the ground that she had remarried. The motion was granted and the former judgment amended as required in such cases upon the remarriage of the wife. New York Civil Practice Act, § 1172-c. However, the New York Court, in striking from its judgment the provision for support, entered this provision in its decree: "* * * and it is further ordered, that the disposition of the within motion is without prejudice to such rights as plaintiff may have pursuant to the terms of said agreement between the parties dated April 2, 1947."
We shall first consider the defendant's motion to strike. When this cause was before us at the Fall Term 1952, on a similar motion, we held that the defendant's motion to strike from the plaintiff's reply all the allegations which attacked the validity of the separation agreement entered into on 2nd April, 1947, should have been granted, and reversed the ruling to the contrary
*170 The plaintiff thereafter obtained permission from the court below to file an amended reply. This reply alleges in sum and substance that the agreement entered into on 2nd April, 1947, was merged in the decree for a divorce entered in New York and the contractual rights thereunder did not survive the decree; that it was not the intention of the plaintiff that the separation agreement should survive the divorce judgment or remarriage of the defendant Hawes, but, to the contrary, it was his intent that it should be merged therein and not survive the decree. Therefore, the amendments to the previously amended reply do raise the question of merger, and the motion to strike was properly denied.
The refusal to grant the motion for judgment on the pleadings is not appealable. Erickson v. Starling, 235 N.C. 643, 71 S.E.2d 384; Rodgers v. Todd, 225 N.C. 689, 36 S.E.2d 230; Ornoff v. City of Durham, 221 N.C. 457, 20 S.E.2d 380; Cody v. Hovey, 216 N.C. 391, 5 S.E.2d 165.
In the instant case, however, the appellee conceded in the oral argument before this Court that if the separation agreement, dated 2 April, 1947, was not merged in and made inoperative as a contract by its incorporation in the divorce decree entered in New York, which became effective on 15th October, 1947, the appellant is entitled to judgment on the pleadings. In fact, plaintiff's counsel (Mr. Rothenberg) directed substantially all his argument before this Court to the question of merger. Hence, we have decided to exercise our discretionary right to express an opinion on the merits of the plaintiff's purported allegations and contentions with respect to that defense. Suddreth v. City of Charlotte, 223 N.C. 630, 27 S.E.2d 650.
Before reviewing the New York cases on the question of merger, it might be well to point out that if the parties to the respective separation agreements referred to herein, intended that the second agreement should be merged into a judgment for support in the nature of alimony and no more, as contended by the plaintiff, then the appellant was almost inconceivably remiss in safeguarding her own rights. Under the original agreement she had the following benefits: (1) The plaintiff was obligated to pay her $4,200 per year in equal monthly installments of $350, payable in advance on the first of each and every month; (2) the plaintiff was required to procure a policy of insurance on his life in the sum of $25,000, pay the premiums thereon, and to make his wife the irrevocable beneficiary thereunder; and (3) she was to have the use and benefit of an apartment and the effects therein contained, located at 1060 Park Avenue, New York. She gave up all these benefits which had been secured to her for life, or until her remarriage, in exchange for an agreement to the effect that she should receive the income from certain stock, amounting to approximately $1,600 per year, for life, regardless of her marital status; and as further evidence of the intention of the parties as to whether such agreement should survive her remarriage, they had the following provisions written therein:
"It is * * * agreed between the parties that the payments due hereunder * * * shall commence on the 1st day of May 1947, and shall continue during the lifetime of the party of the first part irrespective of the marital status of the said party of the first part.
"The parties hereto agree that the provisions of this instrument shall remain in full force and effect notwithstanding any action of any nature whatsoever taken by either party in the courts of this State, any other State or in any other Country; and the parties further agree that this instrument and all the provisions thereof shall remain in full force and effect notwithstanding any judgment or decree obtained by either party in this State, any other State or any other Country.
"That each party shall, and will, at any time, or times, make, execute and deliver, any and all further assurances, things and documents, as the other said *171 party shall reasonably require for the purpose of giving full force and effect to this agreement and to the covenants, conditions and provisions thereof.
"That all of the covenants, promises, stipulations and provisions herein contained shall apply to, bind and be obligatory upon, the heirs, executors, administrators and assigns of the parties hereto."
In Kunker v. Kunker, 230 App.Div. 641, 246 N.Y.S. 118, 122, while the action for divorce was pending the parties entered into a written agreement in which the husband agreed to make certain monthly payments to his wife during his lifetime for the support of herself and two children. The agreement further provided that in case of the remarriage of the wife, or in case of the death of either or both the children, the husband might apply to the court for a modification of the monthly payments. It was further provided that the agreement was made subject to the approval of the court and should be made a part of the final judgment of divorce to be entered in the action. Among other things, the Court said: "There is nothing in the statute giving jurisdiction to incorporate into the judgment formal private agreements made by the parties as to a division of their property and the like. Agreements or stipulations for support and security therefor, including many details, are sometimes included in the judgment if they appear fair, rendering it unnecessary to take proof. So, here, it was possible for the parties to stipulate that certain provisions in the agreement relative to support should be included in the judgment for whatever advantage that might bring, and otherwise that the agreement should remain in force. * * * If a contract is made, the courts will not award a different sum. Cain v. Cain, 188 App.Div. 780, 177 N.Y.S. 178; Levy v. Levy [149 App.Div. 561, 133 N.Y.S. 1084]. If there is an existing contract, there is really no necessity for an application for alimony. There have been cases where such provisions have been incorporated in the judgmentfor what purpose is uncertain, unless to give an additional remedy by contempt. But they became a part of a judgment separate from the contract." (Italics ours.) The Court pointed out that the agreement between the parties in the Kunker case contained "no reservation that the contract should endure after it became part of the judgment."
Likewise in Jaeckel v. Jaeckel, 179 Misc. 994, 40 N.Y.S.2d 491, 493, the agreement with respect to support was entered into while the action for divorce was pending, and it provided that if the wife succeeded in her action the amount agreed upon should be incorporated in the final decree. The Court said: "So far as the defense of merger is concerned, where there is an intention to merge the agreement as to alimony in the decree and the decree embodies the agreement as to alimony, no right to enforce the alimony provisions of the agreement survives the decree. Chester v. Chester, 171 Misc. 608, 13 N.Y.S.2d 502; Zatz v. Zatz, App.T.First Dept., 173 Misc. 229, 17 N.Y.S.2d 553 * * *." The Court further said, however, that "In Bell v. Bell, 171 Misc. 605, 13 N.Y.S.2d 500, an action on the contract fixing the amount of permanent alimony was upheld because the contract explicitly provided that `this agreement shall still remain in full force and effect unless mutually modified or cancelled by the parties hereto, and this agreement may be incorporated in any decree of divorce or separation made by any court of competent jurisdiction.'"
In the case of Schmelzel v. Schmelzel, 287 N.Y. 21, 38 N.E.2d 114, 115, the parties entered into a separation agreement which provided that the terms thereof should be incorporated in any judgment in any action between them wherein provision was made for the support of the wife. Thus the separation agreement expressly contemplated a suit for separation in the future. Later the wife was granted a divorce. The decree required the parties to comply with the provisions of the separation agreement. The financial situation of the defendant husband having improved, the plaintiff, two and one-half years after the entry of the original decree, made a motion for an *172 order to increase the alimony. The motion was allowed and the alimony increased. The defendant appealed and the Court of Appeals of New York, in reversing the lower court, said: "In the case at bar the final judgment of separation did not terminate the separation agreement, but as in the case of Goldman v. Goldman, 282 N.Y. 296, 26 N.E.2d 265, 269, the judgment entered incorporated the terms of the separation agreement, which included fixing the amount of alimony for the support of the wife. Such incorporation was made pursuant to an express provision of the separation agreement. In such event, as the court pointed out in the Goldman case, `the direction of the court that the defendant shall pay to the plaintiff a sum less than he agreed to pay does not relieve the defendant of any contractual obligation' and `the plaintiff may still resort to the usual remedies for breach of a contractual obligation if there has been such a breach,' since `so long as the contract remains unimpeached, the court will not compel the husband to pay to the wife for her support a sum greater than the wife agreed to accept, at least where such sum is not plainly insufficient.' Goldman v. Goldman, supra, 282 N.Y. at pages 301, 305, 26 N.E.2d at page 267. The decision in the Goldman case reaffirmed the rule as announced in the cases of Galusha v. Galusha, 116 N.Y. 635, 22 N.E. 1114, 6 L.R.A. 487, 15 Am.St.Rep. 453; Id., 138 N.Y. 272, 274, 33 N.E. 1062, that a decree or a subsequent order in a matrimonial action does not destroy the agreement or deprive the parties of their rights thereunder." (Italics ours.)
In Graham v. Hunter, 266 App.Div. 576, 42 N.Y.S.2d 717, the parties entered into a separation agreement on 31st December, 1932. Thereafter, the husband went to Nevada and obtained a divorce in February 1933. The Nevada decree ratified, confirmed, and approved the separation agreement and adopted it in all respects. The former husband met the annual payments required under the separation agreement and the Nevada decree until his former wife remarried in July 1941. From that time, he refused to make any further payments. The action was instituted to recover the balance alleged to be due for the remainder of the year 1941 under the separation agreement and the decree of the Nevada divorce. The lower court held that there was a triable issue as to whether or not payments by the husband were to be terminated upon the remarriage of the wife. The wife contended that the terms of the separation agreement and of the decree were unambiguous and that their meaning and construction presented a question of law for the court and not an issue of fact to be determined upon a trial. The Court held that the provisions of the agreement manifested an intention of the parties that the payments to be made each year were not to cease upon the remarriage of the wife. The order of the lower court was modified and plaintiff's motion for summary judgment allowed. Cf. Sureau v. Sureau, 280 App.Div. 927, 116 N.Y.S.2d 470; Id., 305 N.Y. 720, 112 N.E.2d 786.
It is settled law that where the terms of a written instrument or contract are explicit, the court determines their effect by declaring their legal meaning. R.T. Wilson & Co. v. Levi Cotton Mills, 140 N.C. 52, 52 S.E. 250; Strigas v. Durham Life Insurance Co., 236 N.C. 734, 73 S.E. 2d 788, and cited cases. Furthermore, the construction of a contract does not depend upon what either party thought, but upon the agreement of both. Brunhild v. Freeman, 77 N.C. 128; Wilson v. Scarboro, 163 N.C. 380, 79 S.E. 811. "The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." Gould Morris Electric Co. v. Atlantic Fire Insurance Co., 229 N.C. 518, 50 S.E.2d 295, 297.
In the instant case, it is crystal clear, we think, that plaintiff and his former wife, now Mrs. Hawes, the appellant herein, intended that the provisions contained in the separation agreement executed by them on 2nd April, 1947, should survive any decree for divorce, alimony, or remarriage of the appellant. The agreement *173 so provides in unambiguous terms. Therefore, in light of the above decisions of the New York courts, it is our opinion that the agreement was not merged with the divorce decree in New York, but on the contrary, is a valid and enforceable contract. Stanley v. Stanley, 226 N.C. 129, 37 S.E.2d 118.
The ruling of the court below on defendant's motion to strike is affirmed, and the cause is remanded for further proceedings agreeable to law.
Affirmed.